**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 30, 2021

**BY CM/ECF**

The Honorable Richard M. Berman
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Jonatan Correa*, S2 20 Cr. 18 (RMB)

Dear Judge Berman:

    The defendant in the above-captioned case is scheduled to be sentenced on May 11, 2021 at 10:00 a.m. For the reasons set forth below, the Government believes that a sentence below the Guidelines range of 12 to 18 months' imprisonment would be sufficient, but not greater than necessary, to meet the purposes of sentencing.

    **I.  Offense Conduct**

    **A.  Background on the Sparks Group**

    As described in the Presentence Investigation Report ("PSR"), between in or around 2016 and in or around 2020, the United States Postal Inspection Service and Homeland Security Investigations investigated an international criminal conspiracy known as the "Sparks Group," which began as early as 2011. The primary objective of the Sparks Group was to fraudulently obtain DVDs and Blu-Ray discs for copyrighted movies and television shows prior to their retail release date, compromise the copyright protections on the discs, reproduce and upload the copyrighted content to servers controlled by the Sparks Group, and disseminate the copyrighted content on the Internet for public consumption before the DVDs and Blu-Ray discs were made available for sale by retailers to the public. Over the course of the conspiracy, the Sparks Group successfully reproduced and disseminated at least 1400 movies and television shows prior to their retail release date, including nearly every movie released by major production studios. The Sparks Group has caused tens of millions of dollars in losses to film production studios. (PSR ¶¶ 7-9).

    The Sparks Group generally worked as follows: First, members of the Sparks Group, including defendant Jonatan Correa, obtained DVDs and Blu-Ray discs from wholesale distributors up to several weeks prior to their retail release date. To do so, members of the Sparks

Group made various material misrepresentations and omissions to the wholesale distributors concerning, among other things, the reasons that members of the Sparks Group were obtaining DVDs and Blu-Ray discs prior to the retail release date. The Sparks Group continuously searched for and solicited distributors and retailers that could be used to obtain DVDs and Blu-Ray discs as early as possible. (PSR ¶¶ 10).

Once they obtained the DVDs and Blu-Ray discs, members of the Sparks Group, including the defendant, used computers with specialized software that compromised the copyright protections on the discs (a process known as "cracking" or "ripping") and reproduced and encoded the content in a high-definition format that could be easily copied and disseminated over the Internet. (PSR ¶ 11). Members of the Sparks Group, including the defendant, then uploaded copies of the copyrighted content onto servers controlled by the Sparks Group, where members of the Sparks Group further reproduced and disseminated the content on streaming websites, peer-to-peer networks, torrent networks, and other servers accessible to members of the public, all before the retail release date for the DVDs and Blu-Ray discs. The Sparks Group identified its reproductions by encoding the filenames of the reproduced copyrighted content with the tags "SPARKS," "DRONES," "ROVERS," "GECKOS," and "SPRINTER," among others. The Sparks Group also uploaded photographs of the discs in their original packaging to its servers to demonstrate that the reproductions originated from authentic DVDs and Blu-Ray discs. To avoid law enforcement detection, members of the Sparks Group communicated with each other using Internet Relay Chat and secure end-to-end encryption messaging platforms like Threema. (PSR ¶¶ 12-13).

In coordination with law enforcement authorities in 18 other countries, dozens of servers around the world controlled by the Sparks Group, including in North America, Europe, and Asia, were taken offline on August 26, 2020. Prior to August 26, 2020, the Sparks Group had utilized these servers to illegally store and disseminate copyrighted content to members around the globe. (PSR ¶ 19).

### B. The Defendant's Participation in the Sparks Group

Between 2016 and March 2020, the defendant participated in the Sparks Group in various capacities. The defendant received pre-release DVDs and Blu-Ray discs from distributors in Canada and New York City, used a computer with special software to compromise the copyright protections on the discs, and uploaded the copyrighted content to servers controlled by the Sparks Group. The defendant received wire transfers from other members of the Sparks Group for the purposes of purchasing the discs. The defendant also served as a "racer," copying on average 50-100 movie files per day between servers operated by the Sparks Group around the world in order to gain "credits" that allowed the defendant to download copyrighted content from the Sparks Group's servers. Each file was a smaller component of a movie, with movies containing various numbers of component parts, depending on the length of the movie. (PSR ¶¶ 14-15).

The defendant also recorded live copyrighted television shows by remotely accessing a computer belonging to another member of the Sparks Group located in Westchester County, which were similarly uploaded to servers controlled by the Sparks Group. The defendant accessed servers controlled by the Sparks Group by using a computer shell with a "bounce network

connection," which allowed the defendant to conceal his IP address from others. The defendant also downloaded thousands of movies from servers controlled by the Sparks Group. The defendant operated a Linux server at his home with approximately 33 terabytes of movies (approximately 2,000 movies), which were shared with the defendant's friends and family. (PSR ¶¶ 16-18).

On August 25, 2020, a S2 Superseding Indictment (the "Indictment") was unsealed charging the defendant with participating in a conspiracy to commit copyright infringement, in violation of Title 18, United States Code, Sections 371, 2319(c)(1) and (d)(1), and Title 17, United States Code, Sections 506(a)(1)(B) and (C). The defendant was arrested that same day.

## II. The Defendant's Plea and Applicable Guidelines Range

On January 12, 2021, the defendant pleaded guilty to Count One of the Indictment pursuant to a plea agreement. Pursuant to U.S.S.G. § 2B5.3(a), the plea agreement stipulated that the base offense level is 8. Pursuant to U.S.S.G. § 2B5.3(b)(1)(B), the plea agreement stipulated that the offense level is adjusted according to the table from U.S.S.G. § 2B1.1 because the infringement amount exceeded $6,500. Pursuant to U.S.S.G. § 2B5.3 cmt. N.2(a)(i), the infringement amount is equal to the "retail value of the infringed item" multiplied by the "number of infringing items." Because the infringement amount was more than $40,000 and less than $95,000, the plea agreement stipulated that the offense level is increased by 6 levels. Pursuant to U.S.S.G. § 2B5.3(b)(2), the plea agreement stipulated that a two-level enhancement applied because the offense involved the distribution of a work being prepared for commercial distribution. Pursuant to U.S.S.G. § 2B5.3(b)(3)(A), the plea agreement stipulated that a two-level enhancement applied because the offense involved the uploading of infringing items. Pursuant to U.S.S.G. § 2B5.3(b)(4), the plea agreement stipulated that a two-level decrease applied because the offense was not committed for commercial advantage or private financial gain. Assuming a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, the plea agreement stipulated that the total offense level is 13. The plea agreement also stipulated that the defendant has zero criminal history points, resulting in a Criminal History Category of I. As a result, the plea agreement stipulated that the applicable Guidelines range was 12 to 18 months' imprisonment.

The PSR, prepared by the Probation Office on April 5, 2021, also found that the defendant's Guidelines range was 12 to 18 months' imprisonment. (PSR ¶¶ 24-43, 71).

## III. Discussion

### A. Applicable Law

Although *United States* v. *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B.  A Sentence Below the Guidelines Range is Reasonable in this Case

The Government submits that a sentence below the Guidelines range of 12 to 18 months' imprisonment is sufficient, but not greater than necessary, in this case to reflect the seriousness of the defendant's conduct, promote respect for the law, and provide just punishment for the offense.

As an initial matter, the defendant is being sentenced for serious criminal conduct. For years, the defendant knowingly and willfully violated the copyright laws of the United States by participating in the Sparks Group, a sophisticated criminal conspiracy that obtained and disseminated copyrighted movies and television shows all over the Internet, including copyrighted works that were being prepared for retail release. The defendant had multiple functions in the Sparks Group—he obtained DVDs and Blu-Ray discs and "cracked" the copyrighted protections on the discs by using special software. He also uploaded the copyrighted works to servers controlled by the Sparks Group, and then copied the content across different servers located around the world. Over the course of the conspiracy, the Sparks Group successfully reproduced and disseminated hundreds of movies and television shows prior to their retail release date, causing film production studios tens of millions of dollars in losses.

Nevertheless, the Government also recognizes that the nature of the defendant's participation and position in the Sparks Group are relevant considerations. The defendant did not participate in the Sparks Group for financial gain, and his role in the Sparks Group was not nearly as extensive as some of his co-conspirators, who recruited and supervised other members of the Sparks Group and defrauded disc distributors into selling discs to the Sparks Group prior to the retail release date. The Government believes that the defendant is substantially less culpable than the leaders of the Sparks Group who had more insight into the inner workings of the organization and oversaw its operations on a day-to-day basis.

Additionally, when confronted by law enforcement officers, the defendant immediately provided a full confession regarding his involvement in the Sparks Group and made efforts to cooperate with law enforcement. In connection with those efforts, the Government met with the defendant, but ultimately concluded that the defendant's knowledge of the Sparks Group – while credible – was duplicative with other information the Government had already obtained during its investigation. The Government credits the defendant's efforts to provide assistance and notes that the defendant's proffered information corroborated information developed over the course of the investigation. Although the defendant was not offered a cooperation agreement, the defendant nevertheless elected to plead guilty before receiving any Rule 16 discovery materials—which would have provided the defendant with information about the Government's investigation of the Sparks Group. The defendant's guilty plea confirms what was demonstrated during his proffer with the Government—that the defendant immediately and completely accepted responsibility for his conduct. The Government also understands that the defendant intends to provide full restitution to the Motion Picture Association ("MPA") at the time of sentencing. Additionally, the Court has discretion to order the defendant to pay a fine as part of the sentence. (PSR ¶ 69). Accordingly, the Government submits that the defendant's conduct since the time of his arrest is a substantial mitigating factor relevant at sentencing.

In sum, the Government believes that the defendant's arrest and felony charge has impressed upon the defendant the seriousness of his criminal conduct, as illustrated by the defendant's willingness to accept responsibility, assist law enforcement, and make full restitution to the victims of his crimes. In addition to providing specific deterrence to the defendant, the fact of the defendant's arrest and felony charge will have a significant deterrent impact on others who may contemplate engaging in criminal copyright infringement. The Government is similarly hopeful that the defendant's participation in the Sparks Group will prove to be a singular mistake in judgment in an otherwise productive and law-abiding life. As a result, the Government believes that a sentence below the Guidelines range is appropriate in this case.

## V. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence below the Guidelines range of 12 to 18 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By:     /s/ Andrew K. Chan
Andrew K. Chan / Mollie Bracewell
Christy Slavik
Assistant United States Attorney
(212) 637-1072 / 2218 / 1113

cc: David Wikstrom, Esq.